UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 17, 2013

LETTER TO COUNSEL:

      RE:    *Danielle N. Frye v. Commissioner, Social Security Administration*;
              Civil No. SAG-12-3765

Dear Counsel:

      On December 22, 2012, the Plaintiff, Danielle N. Frye, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Supplemental Security Income and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Ms. Frye's Reply. (ECF Nos. 18, 22, 23). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will deny both motions and remand the case to the Commissioner. This letter explains my rationale.

      Ms. Frye filed her claims in March, 2009, alleging disability beginning on December 2, 2005. (Tr. 153-57). Her claims were denied initially on November 19, 2009, and on reconsideration on October 15, 2010. (Tr. 82-89, 96-99). A hearing was held on June 17, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 32-77). Following the hearing, the ALJ determined that Ms. Frye was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 9-25). The Appeals Council denied Ms. Frye's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Ms. Frye suffered from the severe impairments of asthma, depression, obesity, and diabetic neuropathy. (Tr. 14). Despite these impairments, the ALJ determined that Ms. Frye retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can occasionally perform all posturals; but can never climb ladders, ropes, and scaffolds. She must avoid all moving machinery and exposure to hazardous materials. In addition, she is limited to routine, repetitive, simple tasks requiring minimal interaction with co-workers.

(Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that there are jobs that exist in significant numbers in the national economy that Ms. Frye can perform. (Tr. 19-20).

Ms. Frye presents three arguments on appeal: (1) that the ALJ incorrectly considered Listing 12.04 (affective disorders); (2) that the ALJ improperly assigned weight to the opinions of various medical sources; and (3) that the ALJ's mental RFC was improper. Although not all of Ms. Frye's contentions are meritorious, I agree generally that the ALJ failed to fulfill his duty of explanation as to his consideration of Ms. Frye's mental impairments. Accordingly, I will remand this case to the Commissioner for further analysis.

The flaws in the ALJ's analysis begin with the severity findings at Step Two. While the ALJ found certain impairments to be severe, the ALJ noted that Ms. Frye "alleges epilepsy and reported experiencing periodic petit mal seizures," but made no severity determination as to that impairment. (Tr. 14). Moreover, the record is rife with other mental health-related diagnoses, including substance abuse, antisocial personality disorder, borderline personality disorder, and bipolar disorder. (Tr. 412, 582). Although the ALJ acknowledges those diagnoses later in the opinion (Tr. 18, 19), again, he made no severity determination regarding those impairments at Step Two. The failure to address certain impairments at Step Two can be harmless error if the impairments are adequately considered elsewhere in the opinion, however, as set forth below, the remainder of the opinion considering Ms. Frye's mental impairments is also deficient. *See Schoofield v. Barnhart,* 220 F.Supp.2d 512, 518 (D. Md. 2002) ("Erroneous findings at step two usually infect the entire decision, since all of a claimant's impairments must be considered in combination at steps three, four, and five.").

At Step Three, the ALJ considered whether Ms. Frye's impairments met or medically equaled Listing 12.04 (affective disorders). (Tr. 15-16). However, the ALJ's analysis of Ms. Frye's "episodes of decompensation" contains apparent error. (Tr. 16). While the ALJ refers to her "treat[ment] in an emergency room" in May, 2004, he fails to acknowledge records evidencing multiple inpatient hospitalizations for psychiatric treatment. *See, e.g.,* (Tr. 266-68) (reflecting May, 2004 hospital admission following a drug overdose); (Tr. 342-43) (evidencing May, 2005 hospitalization for depression); (Tr. 306-309) (demonstrating May, 2006 hospital admission for suicidal behavior). In light of the evidence of record, the ALJ's conclusion that Ms. Frye had experienced "no episodes of decompensation" requires further explanation. Again, while that error standing alone might be harmless, it is worth noting that the ALJ also failed to identify and consider the Listings for Ms. Frye's other mental health diagnoses, such as Listing 12.08 (personality disorders) and 12.09 (substance addiction disorders). *See, e.g.,* (Tr. 587) (Dr. Lessans's opinion identifying those listings as relevant to Ms. Frye's case).

The ALJ's RFC analysis also lacks sufficient explanation of its conclusions. I disagree with Ms. Frye's allegation that the ALJ afforded insufficient weight to her treating physician, Dr. Latif, simply because it does not appear that Dr. Latif issued any opinions relating to Ms. Frye's ability to perform work-related functions. However, the ALJ's opinion does not contain substantial evidence to support the RFC. With respect to Ms. Frye's physical capabilities, the consultative examiner, Dr. Peprah, had limited Ms. Frye to standing "for about five minutes" and walking "for about a block." (Tr. 454). While citing Dr. Peprah's report and without citing any contradictory evidence, the state agency physicians determined that Ms. Frye could stand for up to six hours, which supported their "light work" recommendation. (Tr. 456, 462, 572, 578). The

ALJ did not address that discrepancy, simply assigning "significant weight" to the opinions of both Dr. Peprah and the state agency physicians, alleging that both were "generally consistent with the record evidence as a whole." (Tr. 18, 19). Because the opinions were inconsistent with one another, further explanation is required.

The ALJ's analysis of Ms. Frye's mental health is similarly flawed. The ALJ cites to a small sampling of Ms. Frye's records of mental health treatment, which, at best, provide a reflection of a wide variation in symptoms over time. (Tr. 18). Further, the ALJ notes that the psychological consultative examiner, Dr. Kradel, concluded that Ms. Frye's "prognosis is below average and indicated she is not capable of managing finances." *Id.* Despite reciting that evidence generally supporting an inability to sustain substantial gainful employment, the ALJ then gives "significant weight" to the more optimistic conclusions of the state agency psychological consultants, asserting that they "are generally consistent with record evidence as discussed above." (Tr. 19). In a case in which the record evidence is decidedly mixed in nature, the conclusory allegation that an opinion is "generally consistent with record evidence" is of limited utility. Further explanation is therefore required to substantiate the ALJ's conclusions regarding Ms. Frye's mental and physical RFCs. Although I am remanding the case for further analysis, I express no opinion as to whether or not the ALJ's ultimate conclusion that Ms. Frye was not entitled to benefits is correct or incorrect.

For the reasons set forth above, the Commissioner's Motion for Summary Judgment (ECF No. 18) and Ms. Frye's Motion for Summary Judgment (ECF No. 22) will be DENIED. The ALJ's opinion will be VACATED and the case will be REMANDED for further proceedings. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge